IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ANDRETTI M. DANIELS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:11-cv-371-TFM |
| | ) | [wo] |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Andretti M. Daniels ("Plaintiff" or "Daniels") originally applied for Disability Insurance Benefits and Social Security Income under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq.*, on April 26, 2006.  (Tr. 104-107).  After being denied, Daniels timely filed for and received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision on February 12, 2009.  (Tr. 27-61).  Daniels sought review by the Appeals Council who rejected review on March 22, 2011.  (Tr. 1).  As a result, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner").  *Id.*  Judicial review proceeds pursuant to 42 U.S.C. § 405(g), and 28 U.S.C. § 636(c).  After careful scrutiny of the record and briefs, for reasons herein explained, the Court AFFIRMS the Commissioner's decision.

**I. NATURE OF THE CASE**

Daniels seeks judicial review of the Commissioner's decision denying his application for disability insurance benefits.  United States District Courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence.  42 U.S.C. § 405.  The Court may affirm, reverse and remand with instructions, or reverse and render a judgment.  *Id*.

## II.  STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one.  The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied.  *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'"  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)).  Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  Substantial evidence is more than a scintilla — *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

### III.  STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[1]  *See* 42 U.S.C. § 423(a).  The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program.  SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[2]  Eligibility for SSI is based upon proof of indigence and disability.  *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C).  However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986).  Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs.  *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a).  A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

---

[1] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

[2] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues.  *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment(s) severe?
>
> (3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[3]
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004).  Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4.  At

---

[3] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or hear testimony from a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

### IV. ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Daniels, age 33 at the time of the ALJ's decision, completed the twelfth grade. (Tr. 30-31.) In the relevant past, Daniels performed work cooking at Taco Bell, lacing up machinery and acting as a twister operator at Shaw Industries. He also worked

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

construction for Brunson Nichols Pipeline, loaded belts for K and W Plastics, stacked groceries at H.B. Popp and Company, loaded groceries on a pallet for ADC and Company, and acted as a parts assembler for a Hyundai plant. (Tr. 32-35). Daniels alleges his disability began April 26, 2006. (Tr. 104-107). Under the regulations, when a claimant files an SSI application, the earliest month in which he can receive benefits is the month following the month in which his application was filed. *See* 20 C.F.R.§ 416.335. Thus, the relevant time period for determination of Daniels' disability is between April 26, 2006, the date of Plaintiff's application, (Tr. 104-107) and February 12, 2009, the date of the ALJ's decision. (Tr. 27-61). Daniels testified that he can not work because of chest pain and numbness in his left arm, shoulder, fingertips, and leg. (Tr. 36, 38, 53). Daniels testified that the pain is constant and began after his heart attack in 2005. (Tr. 38). Daniels said that the pain in his shoulder, chest and legs worsens with physical activity. (Tr. 39).

The ALJ found that Daniels has severe impairments of obesity, status post myocardial infarction, sleep apnea and hypertension (Tr. 18), but that Daniels did not have an impairment or a combination of impairments that meet or medically equal one of the listed impairments. (Tr. 19). The ALJ concludes from the entire record that Daniels "has the residual functional capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c) and 416.967(c)." (Tr. 19). Specifically, the ALJ found that Daniels can lift or carry fifty pounds occasionally and twenty-five pounds frequently. He can stand and/or walk six hours in an eight-hour day and can sit six hours in an eight-hour workday. He can occasionally push and/or pull with his left lower extremity. The ALJ found that

Daniels cannot work in setting which expose him to extreme heat, extreme cold, humidity, wetness, pulmonary irritants and hazardous conditions such as unprotected heights, dangerous machinery or uneven surfaces.  Daniels can not work in a place which requires him to climb ladders, ropes or scaffolds.  He has a mild restriction in daily living, no difficulty with social functioning; mild difficulties in concentration, persistence or pace and no episodes of decompensation.  (Tr. 19).

## V.  ISSUES

Daniels raises four issues for judicial review.  The issues and arguments Daniels raises turn upon this Court's ultimate inquiry of whether the Commissioner's disability decision is supported by the proper legal standards and by substantial evidence.  *See Bridges v. Bowen,* 815 F.2d 622, 624-25(11th Cir.1987).  These issues are set out by Daniels as follows:

(1)  Whether the ALJ erred in making his Residual Functional Capacity ("RFC") assessment because the record does not include any RFC assessments provided by a physician.  (*See* Doc. 12 at 6).

(2)  Whether the ALJ failed to develop the record by not ordering a consultative examination addressing Daniels' anxiety for the purpose of establishing an appropriate RFC.  (*See* Doc. 12 at 6).

(3)  Whether the ALJ erred in failing to explain the weight accorded to any of the medical opinions of record other than that of Dr. Seiler.  (*See* Doc. 12 at 6).

(4)  Whether the ALJ erred because the RFC assessment fails to take into account Daniels severe impairment of "sleep apnea."  (See Doc. 12 at 6).

## VI. DISCUSSION

**I. The ALJ did not err in finding Daniels' RFC without an RFC assessment from a physician.**

Plaintiff argues that the ALJ erred in finding Daniels' RFC without an RFC assessment from a physician in the record. In support of this argument Plaintiff cites to *Thomason v. Barnhart,* 344 F. Supp.2d 1326 (N.D. Ala. 2004) and *Coleman v. Barnhart,* 264 F. Supp. 2d 1007 (S.D. Ala. 2003). Contrary to Plaintiff's argument, there is no rule of law which requires that an ALJ's RFC determination be supported by an assessment from a physician.

In *Thomason* the lack of a formal assessment by a physician of plaintiff's RFC was but one of six reasons why the court concluded that substantial evidence did not support the decision denying benefits. 344 F. Supp. 2d at 1329-30. Most importantly, there was no citation by the *Thomason* Court to any source of law requiring such an assessment by a physician for the purposes of making an RFC determination. *Id.* Similarly in *Coleman,* the Court concluded that the ALJ's RFC determination was not supported by substantial evidence where "particularly in light of plaintiff's numerous severe impairments" the RFC was not supported by an assessment completed by a physician. 264 F. Supp. 2d at 1010-11. Furthermore, the *Coleman* Court likewise gave no citation to any source of law requiring a physician's assessment for the purposes of making an RFC determination. *Id*

Indeed, Judge Foy Guin of the Northern District has recently addressed this specific question and concluded that "the law of this Circuit does not require an RFC

from a physician." *Langley v. Astrue,* 777 F.Supp.2d 1250, 1257-58 (N.D. Ala. 2011). Moreover, the court in *Langley* disagreed with the *Coleman* case cited above because its reasoning "attempt[s] to place the burden of proving the claimant's RFC on the Commissioner at step five" and this shifting of the burden is "inconsistent with the Commissioner's regulations, Supreme Court precedent and unpublished decisions in this Circuit." *Id.* at 1258-60. (Citations omitted.). The Court is persuaded by the reasoning of *Langley* Court. Accordingly the Court concludes that Daniel's argument fails and the ALJ did not err in finding Plaintiff's RFC without the benefit of a physician's assessment in the record.

> **II. The ALJ did not err in failing to order a consultative examination for the purpose of establishing an RFC which took Daniels' anxiety into consideration.**

A residual functional capacity assessment is used to determine the claimants' capacity to do as much as they are possibly able to do despite their limitations. *See* 20 C.F.R. § 404.1545(a)(1) (2010). An RFC assessment will be made based on all relevant evidence in the case record. *Id.*; *Lewis v. Callahan*, 125 F.3d at 1440. At an ALJ hearing, "the [ALJ] is responsible for assessing [the claimant's] residual functional capacity." 20 C.F.R. § 404.1546(c) (2010). The claimant is "responsible for providing the evidence [the ALJ] will use to make a finding about [the claimant's] residual functional capacity." 20 C.F.R. § 404.1545(a)(3) (2010). The ALJ is "responsible for developing [the claimant's] complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [their] own medical sources. *Id.; Holladay v. Bowen,*

848 F.2d 1206, 1209-10 (11th Cir. 1988).  (The ALJ is not required to order a consultative examination unless the record establishes it is necessary to render a fair decision).  The ALJ's finding must be supported by substantial evidence.  *Moore v. Barnhart,* 405 F.3d 1208, 1211 (11th Cir. 2005).  (Citations omitted).  "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.*

Plaintiff argues that the ALJ erred by failing to order a consultative examination dealing with his anxiety for the purpose of establishing an appropriate RFC.  The Commissioner's duty to develop the record includes ordering a consultative examination if one is needed to make an informed decision.  *Reeves v. Heckler,* 734 F.2d 519, 522 n. 1 (11th Cir. 1984).  However, where no physician recommends an additional consultation and the record is sufficiently developed for the ALJ to make a determination, the failure to order an additional consultative examination is not error.  *Good v. Astrue,* 240 Fed. Appx. 399,*3 (11th Cir. 2007) citing *Wilson v. Apfel,* 179 F.3d 1276, 1278 (11th Cir. 1999).

The medical records show that Dr. Kenneth Crowe treated Plaintiff for chest pain, hypertension, anxiety, sleep apnea, and obesity in 2005-2006.  (Tr. 236-266)**.**  On February 1, 2005, Dr. Crowe saw Plaintiff as a follow-up to his recent hospitalization for chest pain.  Dr. Crowe noted that Plaintiff's chest pain was "resolved"; his hypertension "controlled" and he smokes but wants to quit.  Dr. Crowe also noted that Plaintiff weighs 340 pounds but plans to "try a high fiber diet and exercise program for his weight and dyslipidemia."  Plaintiff also took an exercise stress test that "was negative for any signs

of ischemia." (Tr. 239). On February 8, 2005, Dr. Crowe again saw Plaintiff and he complained of fatigue, lack of energy, and sharp chest pains. Dr. Crowe diagnosed anxiety, fatigue, musculoskeletal chest pain and hypertension–controlled. He prescribed aspirin, Protoxin, and Lopressor and "allow[ed] him back to work immediately". (Tr. 238.) On May 1, 2006, Plaintiff saw Dr. Crowe again complaining of chest pain and anxiety. Dr. Crowe noted he would see Plaintiff in about five weeks following a cardiological evaluation by Dr. Craven. Further, Dr. Crowe prescribed Diazepam "to use sparingly, with no refills for his anxiety." Plaintiff did not appear for his June 5, 2006 follow-up appointment with Dr. Crowe. (Tr. 236).

      The record also shows that Plaintiff complained of anxiety during an examination resulting from a single-day hospital stay in September, 2006 where he was treated for chest pain and palpitations. (Tr. 305). However, other examinations consistently revealed that he was alert (Tr. 186, 305, 318, 338), and oriented (Tr. 186, 305, 318, 338, 340), and demonstrated normal mood and affect (Tr. 340), and normal, coherent speech. (Tr. 186, 338). Moreover, Plaintiff denied any psychosocial complaints. (Tr. 334, 338, 345). Indeed, Plaintiff reported that he could pay attention, follow, and remember what he heard and watched (Tr. 49, 153), get along with others (Tr. 154), and finish most tasks. (Tr. 155). Furthermore, Plaintiff did not seek mental health treatment, with the exception of the limited anxiety medication prescribed by his internist, Dr. Crowe. (Tr. 236). *See Wilson v. Barnhart,* 284 F.3d 1219, 1225 n.2 (11th Cir. 2002) (Lack of ongoing treatment maybe considered in evaluating the severity of an alleged disabling impairment.).

Additionally, Eugene E. Fleece, Ph.D. completed a psychiatric review form where he opined that Plaintiff's anxiety was "Not Severe". (Tr. 290).

In his decision the ALJ recognizes that Plaintiff suffers from anxiety and notes that he "has never received any mental health treatment and receives medication from his treating physician for mild anxiety. (Tr. 22). The ALJ concluded that Plaintiff's anxiety was "non-severe" and resulted in a "mild restriction" in "daily living"; "no difficulties" in "social functioning"; "mild difficulties" in concentration, persistence . . .[and] pace"; and "no episodes of decompensation." (Tr. 19). The Court concludes based upon an independent review of the record, including the medical records of Plaintiff's treating physicians and Plaintiff's own testimony, that the ALJ did not err in failing to order a consultative examination concerning Plaintiff's anxiety. *See Good,* 240 Fed. Appx at *3 (where the Court found no error in the ALJ's failure to order a consultative examination because the record was sufficiently developed for the ALJ to make an informed determination and there was no recommendation by a physician for an additional consultation.)

### III. The ALJ's finding that Plaintiff has the Residual Functional Capacity to perform medium work with certain limitations is supported by substantial evidence.

The ALJ's RFC finding must be supported by substantial evidence. *Moore v. Barnhart,* 405 F.3d at 1211. (Citations omitted). "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* The ALJ found that Plaintiff has severe impairments of obesity, status post myocardial infarction, sleep apnea and hypertension

and anxiety, which is non-severe, but concluded that Plaintiff's severe and non-severe impairments did not preclude him from performing a reduced range of medium work. (Tr. 18-20).

The medical evidence demonstrates and there is no dispute that Plaintiff has "severe" status post myocardial infarction. However, examinations between 2005 and 2008 reveal Plaintiff has normal extremity pulses (Tr. 343, 359) and regular cardiac rate and rhythm without abnormal sounds. (Tr. 190, 236-37, 274, 306, 319, 334, 339, 343, 359). A graded exercise test revealed a low probability of any significant coronary disease. (Tr. 189, 200, 208, 236, 272). Electrocardiograms were normal or only minimally abnormal. (Tr. 187, 190, 193, 195, 236, 274, 306, 369). Cardiac catheterization revealed normal coronary anatomy, normal left ventricular systolic function, and the absence of mitral regurgitation. (Tr. 277, 305). A carotid ultrasound revealed only mild abnormalities that were not hemodynamically significant. (Tr. 366-368). An echocardiogram revealed only mild abnormalities. (Tr. 359-360, 371-372).

Indeed, a hospital record for September 28th - 29th 2006 shows Plaintiff admitted complaining of heart palpitations, but at the time of release he was pain-free, and the shortness of breath and palpitations were resolved. (Tr. 305-306). Additionally, Plaintiff had an office exam on April 7, 2008 complaining of a "heart murmur" and "weakness left side" and "numbness". (Tr.357) A follow-up office exam on April 15, 2008 demonstrated no complaints of cardiac pain and that "numbness is some better". (Tr. 361). The ALJ concluded that the Plaintiff's allegations of a disabling heart condition are:

> not supported by the medical evidence of record. Results of the claimant's catheterization were noted to be normal as were imaging studies. It is noted that no physician has placed any restrictions on the claimant's activities.

(Tr. 22).

With respect to Plaintiff's "severe" hypertension, Plaintiff reported feeling "well" while taking his prescribed hypertension medication. (Tr. 237). Additionally, the evidence shows that Plaintiff's "severe" impairment of sleep apnea, as found by the ALJ, (Tr. 18) was corrected with the use of a CPAP device, (Tr. 227) and Plaintiff reported using this device without difficulty. (Tr. 317-318). *See Dawkins v. Bowen,* 848 F. 2d 1211,1213 (11th Cir.1988). (A remediable or controllable medical condition is generally not disabling.) (Citations omitted). Furthermore, with respect to the Plaintiff's "severe' impairment of obesity, the Court finds in light of the favorable objective medical findings and effective treatment summarized above that Plaintiff has failed to establish an obesity related or exacerbated cardiac impairment resulting in limitations pursuant to S.S.R. 02-1p. Indeed, the burden of proving disability rests on the claimant, and the claimant is responsible for producing evidence that supports his claim and allows both the ALJ and the Commissioner to reach the proper conclusion. 20 C.F.R. § 416.912(a).

The Plaintiff also argues that the ALJ erred because he failed to explain the weight accorded to any of the medical opinions of record other than that of Dr. Seiler. (Pl. Brief at p 6). Discretion is given to the ALJ because the Eleventh Circuit stated "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision so long as [his] decision . . . is not a broad rejection which is 'not enough to enable [a court] to conclude that the ALJ considered [a claimant's] medical condition as a whole.'"

*Dyer v. Barnhart,* 395 F.3d 1206,1211 (11th Cir. 2005) (quoting *Foote*, 67 F.3d at 1561). The Court notes that no examining or treating physician rendered an opinion regarding Plaintiff's residual functional capacity. Only Dr. Warren Seiler, who performed a general consultative exam on October 17, 2006, opined that "there were no physical examination findings" to support Plaintiff's claims of disability. (Tr. 21-22). Plaintiff further complains that the ALJ failed to refer to any of the medical evidence of record from Dr. Butler, whom Plaintiff saw on three occasions in 2008. (Tr. 352-382). The Court notes that the ALJ summarized the medical evidence from Drs. Crowe and Craven from 2005 through September 2006 and based upon this court's independent review of the medical evidence, the court concludes that the medical records from Dr. Butler are generally consistent with the medical records from Drs. Crowe and Craven, discussed above. Thus, the Court concludes based upon a review of the record as a whole that the ALJ's RFC finding is supported by substantial evidence. *Moore,* 405 F.3d at 1211.

### VII. CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the Court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law. It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.** A separate judgment is entered herewith.

DONE this 2nd day of January, 2012.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE